## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MACY DOE, a pseudonym, and<br>THOMAS DOE, a pseudonym,<br><div align="right">Plaintiffs,</div><br>vs.<br><br>ROBERT M. COWAN, Director, National<br>Benefits Center, USCIS, in his official<br>capacity,<br>MARK KOUMANS, Acting Director,<br>USCIS, in his official capacity,<br>KEVIN K. MCALEENAN, Acting Secretary,<br>DHS, in his official capacity,<br>U.S. CITIZENSHIP & IMMIGRATION<br>SERVICES, and<br>DEPARTMENT OF HOMELAND<br>SECURITY,<br><div align="right">Defendants.</div> | Civil Action No. |

## COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

### PRELIMINARY STATEMENT

1.      Congress has created a specific immigration classification—"Special Immigrant Juvenile" Status, or "SIJ"—to enable unmarried children under the age of twenty-one who have suffered abuse, abandonment, or neglect to qualify for lawful permanent residency in the United States and obtain relief from these hardships. For an individual to be eligible for SIJ classification, a state "juvenile court" must make certain findings as to the welfare and best interests of the child. U.S. Citizenship and Immigration Services (USCIS), the federal agency responsible for granting SIJ classification, relies on state courts to make these findings. Furthermore, according to its own policies and procedures, USCIS defers to the state court's findings, generally granting SIJ classification to petitioners so long as the state court's findings had a reasonable factual basis.

1

2.     Macy Doe (Macy) and Thomas Doe (Thomas) (collectively, Plaintiffs)[1/] are two SIJ-eligible children currently residing in Massachusetts. Macy is originally from Ecuador, where she faced repeated sexual abuse by relatives and suffered from her parents' neglect, who not only failed to protect her but also blamed her for the abuse she endured. Thomas is originally from Belize, where he faced hardships both at home and in school because of his father's abandonment and his grandfather's alcoholism.

3.     Before they turned twenty-one, Plaintiffs obtained the requisite findings for SIJ eligibility from the Massachusetts Probate and Family Court, a "juvenile court" under state law with jurisdiction to make these findings for an unmarried person under twenty-one. Mass. Gen. Laws ch. 119, § 39M(a)–(b); see 8 C.F.R. 204.11(a). The Probate and Family Court issued these findings in both cases based upon the evidence submitted by Plaintiffs, including personal affidavits from Plaintiffs recounting the abuse, abandonment, neglect, and other hardships they have faced and would once again face if returned to their countries of origin.

4.     Macy and Thomas then petitioned USCIS for the SIJ classification to which Congress has entitled them in order to obtain relief from the trauma they faced in their countries of origin, supporting their SIJ petitions by providing the agency with both the state court's order in their case and the factual basis for that order.[2/]

5.     However, USCIS unlawfully and unconstitutionally denied Plaintiffs' SIJ petitions by distorting applicable state law, ignoring the state courts' findings and supporting evidence, and adding requirements for SIJ eligibility beyond what the law requires. These denials have deprived Plaintiffs of the lawful residency status to which they are entitled, they have disrupted Plaintiffs'

---

[1/]     Alongside this Complaint, Plaintiffs have filed a motion asking the Court to permit them to proceed pseudonymously in this litigation. Accordingly, pseudonyms have been used in place of Plaintiffs' names in this Complaint, and personally identifiable information has been redacted from the exhibits accompanying this Complaint.

[2/]     The SIJ petition is USCIS Form I-360. For simplicity, this Complaint refers to the I-360 as the "SIJ petition."

lives as they seek to establish themselves here in the United States free from the hardships they previously suffered in their countries of origin, and they have exposed Plaintiffs to deportation despite the fact that they are lawfully entitled to relief from removal. If deported, Plaintiffs will once again be subject to the very hardships from which they fled in coming to the United States.

6.      Plaintiffs now ask this Court to order USCIS to reopen Plaintiffs' SIJ petitions, rescind these wrongful denials, and grant Plaintiffs SIJ classification.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action, which arises under the U.S. Constitution and the laws of the United States, per U.S. Const. Amend. V; U.S. Const. Amend. X; 5 U.S.C. § 702; 8 U.S.C. § 1101; and 28 U.S.C. §§ 1331, 2201.

8.      This Court may exercise personal jurisdiction over Defendants in this action per 5 U.S.C. § 702.

9.      Venue is proper in this Court per 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1)(B).

## PARTIES

10.      Plaintiff Macy, originally from Ecuador, is an unmarried individual who was under the age of twenty-one at the time she filed her SIJ petition. Macy currently resides in Plymouth County, Massachusetts.

11.      Plaintiff Thomas, originally from Belize, is an unmarried individual who was under the age of twenty-one at the time he filed his SIJ petition. Thomas currently resides in Worcester County, Massachusetts.

12.      Defendant Robert M. Cowan is the Director of the National Benefits Center (NBC), USCIS. As Director of the NBC, Mr. Cowan oversees and is responsible for the processing of SIJ petitions. *See National Benefit Center*, USCIS, https://egov.uscis.gov/office-locator/#/nbc (last

accessed May 7, 2019). In this capacity, Mr. Cowan oversaw the denial of Plaintiffs' SIJ petitions. Mr. Cowan is being sued in his official capacity only.

13.     Defendant Mark Koumans is the Acting Director of USCIS. As Acting Director of USCIS, Mr. Koumans is the head of the agency. 6 U.S.C. § 271(a)(2). In that capacity, Mr. Koumans oversees the establishment, implementation, and administration of immigration policy, including, as relevant here, the adjudication of SIJ petitions. 6 U.S.C. § 271(a)(3)(A)–(B), (D). Mr. Koumans is being sued in his official capacity only.

14.     Defendant Kevin K. McAleenan is the Acting Secretary of the Department of Homeland Security (DHS). As Acting Secretary of DHS, Mr. McAleenan is responsible for establishing, administering, and enforcing national immigration policies, including, as relevant here, the adjudication of SIJ petitions. 6 U.S.C. § 202(3)–(5); 8 U.S.C. § 1101(a)(27)(J)(iii); 8 U.S.C. § 1103(a)(1). Mr. McAleenan is being sued in his official capacity only.

15.     Defendant U.S. Citizenship and Immigration Services is an agency of the U.S. government within the meaning of the Administrative Procedure Act (APA). 6 U.S.C. § 271; 5 U.S.C. § 551(1). USCIS is housed within DHS. 6 U.S.C. § 271(a)(1). USCIS administers the nation's immigration system, and USCIS is responsible for adjudicating requests for immigration benefits, including SIJ petitions. *See About Us*, USCIS, https://www.uscis.gov/aboutus (last accessed Dec. 5, 2018); 8 C.F.R. § 103.2(a)(7); 8 C.F.R. § 245.2(a).[3/]

16.     Defendant Department of Homeland Security is an agency of the U.S. government within the meaning of the APA. 6 U.S.C. § 111(a); 5 U.S.C. § 551(1). DHS is the cabinet-level

---

[3/]     The responsibility to "consent[] to the grant of special immigrant juvenile status," 8 U.S.C. § 1101(a)(27)(J)(iii), has been delegated by DHS to USCIS. *See* 8 C.F.R. § 100.1 (delegating authority under the Immigration and Nationality Act to USCIS); *see also* USCIS Policy Manual, vol. 6, part J, ch. 4(E)(1), *available at* https://www.uscis.gov/policy-manual/volume-6-part-j; 8 C.F.R. § 103.2(a)(7)(i).

agency of which USCIS is a part. 6 U.S.C. § 271. Also, DHS generally oversees the removal of immigrants from the United States. 8 U.S.C. §§ 1103(a), 1229.

## STATEMENT OF FACTS

### **Special Immigrant Juvenile Status: Background**

17.    In the Immigration Act of 1990, Congress amended the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, to create a "special immigrant status for certain aliens declared dependent on a juvenile court," establishing SIJ classification as a pathway to permanent residency. Pub. L. 101-649, § 153, 104 Stat. 4978, 5005–06. Congress created SIJ status "to provide humanitarian protection for abused, neglected, or abandoned child immigrants . . . ." USCIS Policy Manual, vol. 6, part J, ch. 1(A).[4/] Under the 1990 iteration of the SIJ provision of the INA, an immigrant would be eligible for SIJ classification if: (1) the individual was "declared dependent on a juvenile court located in the United States"; (2) the individual was "deemed eligible by that court for long-term foster care"; and (3) the court had determined that it was "not . . . in the alien's best interest to be returned to the alien's or parent's . . . country of nationality . . . ." 104 Stat. at 5005–06.

18.    In 1997, Congress amended the SIJ provisions of the INA, adding a requirement that "the Attorney General expressly consent[] to the dependency order serving as a precondition

---

[4/]    The Policy Manual is subregulatory "Policy Guidance." *Kirwa v. U.S. Dep't of Defense*, 285 F. Supp. 3d 21, 40 n.20 (D.D.C. 2017). While it purportedly "does not create any substantive or procedural right or benefit that is legally enforceable," USCIS has nonetheless instructed that the Policy Manual "contains the official policies of USCIS and must be followed by all USCIS officers in the performance of their duties." USCIS, *About the Policy Manual*, https://www.uscis.gov/policymanual/HTML/PolicyManual.html#introduction (last accessed Feb. 25, 2019). Under the *Accardi* doctrine, "an agency . . . must follow its own policies and procedures," and "an agency acts arbitrarily and in violation of procedural due process when it does not follow its own procedures." *Lobsters, Inc. v. Evans*, 346 F. Supp. 2d 340, 348–49 (D. Mass. 2004); *Boston Dist. Council of Carpenters v. U.S. Dep't of Hous. & Urban Dev.*, C.A. No. 93-10439-Z, 1993 U.S. Dist. LEXIS 5499, at *6 (D. Mass. Apr. 13, 1993) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see Morton v. Ruiz*, 415 U.S. 199, 235 (1974). Thus, notwithstanding the subregulatory nature of the Policy Manual, the *Accardi* doctrine "provides plaintiffs with a means by which they can hold agencies accountable to their own policies." *Damus v. Nielsen*, 313 F. Supp. 3d 317, 336–37 (D.D.C. 2018). Plaintiffs cite to the Policy Manual for this limited purpose.

to the grant of special immigrant juvenile status[.]" Pub. L. 105-119, § 113, 111 Stat. 2440, 2460. Contemporaneous evidence indicates that this amendment was adopted to address "concern[s] over fraudulent claims by SIJS applicants who did not suffer abuse, neglect, or abandonment." Rodrigo Bacus, *Defending One-Parent SIJS*, 42 Fordham Urb. L.J. 922, 929–30 (2016) (discussing the legislative history). The point was to protect SIJ classification so it could continue to be available to its intended beneficiaries—children who suffered abuse, neglect, or abandonment.

19.     In the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Congress simultaneously expanded SIJ eligibility and simplified the federal government's role in the adjudicative process. *See* Pub. L. 110-457, § 235(d), 122 Stat. 5044, 5079–80. First, Congress eliminated the "long-term foster care" requirement, instead requiring only that the immigrant show that "reunification with 1 or both . . . parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." *Id*. at § 235(d)(1)(A), 122 Stat. at 5079. Second, Congress eliminated the need for the Attorney General's "express consent" to the juvenile court's dependency order, instead requiring simply that "the Secretary of Homeland Security consent[] to the grant of special immigrant juvenile status." *Id*. at § 235(d)(1)(B)(i), 122 Stat. at 5079.[5] Accordingly, "[c]hildren in a variety of different circumstances may be eligible for SIJ classification, including but not limited to . . . [c]hildren who have been abused prior to their arrival in the United States . . . ." USCIS Policy Manual, vol. 6, part J, ch. 1(A).

**Special Immigrant Juvenile Status: Current Requirements**

20.     At present, the law (and implementing regulations) provide that "an immigrant who is present in the United States" is eligible for SIJ classification if he or she meets the following criteria:

---

[5]     As discussed *supra* note 3, this consent responsibility has been delegated to USCIS.

(1) The individual is unmarried and under the age of twenty-one at the time of filing the SIJ petition;

(2) The individual has either been declared dependent on a juvenile court located in the United States or placed under the custody of someone (or some entity) appointed by the juvenile court;

(3) The individual's reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law; and

(4) The state court has determined that it would not be in the individual's best interest to be returned to the individual's, or the individual's parents', previous country of nationality.

8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c); USCIS Policy Manual, vol. 6, part J, ch. 2(D)(3).[6]

21.     If the state court makes these findings and rulings as to dependency, reunification, and best interest, and the state court has a "reasonable factual basis" for making them, "USCIS generally consents to the grant of SIJ classification[.]" USCIS Policy Manual, vol. 6, part J, ch. 2(D)(5). According to USCIS, "documents that a petitioner may submit to USCIS that may support the factual basis for the court order include" items like "[a]ffidavits summarizing the evidence presented to the court" or "[a]ffidavits . . . that are consistent with the findings made by the court." USCIS Policy Manual, vol. 6, part J, ch. 3(A)(3). Thus, even if the state-court order does not itself "include . . . the factual basis for the court's findings," when the state court order is "supplemented" with affidavits or the like that support the court's findings, "the factual basis for the court's findings

---

[6]     The implementing regulations still mention a requirement that the immigrant be "deemed eligible by the juvenile court for long-term foster care." 8 C.F.R. § 204.11(c)(4)–(5). These regulations are outdated, however, as the 2008 amendments eliminated this requirement. *See* Pub. L. No. 110-457, § 235(d)(1)(A), 122 Stat. at 5079; *see also* USCIS Policy Manual, vol. 6, part J, ch. 2(D)(2) n.9 ("The TVPRA 2008 replaced the need for a juvenile court to deem a juvenile eligible for long-term foster care with a requirement that the juvenile court find reunification with one or both parents not viable. . . . USCIS interprets the [2008] changes as a clarification that petitioners do not need to be eligible for or placed in foster care and that they may be reunified with one parent . . . .").

. . . are usually sufficient to establish eligibility." *Id.* USCIS "does not reweigh the evidence" to make its own determinations; but rather, if the state court's findings, rulings, and supporting materials establish the SIJ petitioner's eligibility, USCIS consents to SIJ classification under Section 1101(a)(27)(J)(iii). USCIS Policy Manual, vol. 6, part J, ch. 2(D)(5).

22.     The implementing regulations specify that the individual need only be under twenty-one to meet the age requirement for SIJ classification, 8 C.F.R. 204.11(c)(1), which age stems from the definition of "child" in the INA. *See* 8 U.S.C. § 1101(b)(1) (defining "child" as "an unmarried person under twenty-one years of age"). The 2008 amendments clarified both that Congress intended SIJ classification to be available to children under twenty-one years of age, and that children remain eligible after turning twenty-one so long as they applied for SIJ classification before turning twenty-one. *See* Pub. L. 110-457, § 235(d)(6), 122 Stat. at 5080 (emphasis added) (stating that an immigrant "may not be denied special immigrant status . . . after the date of the enactment of this Act based on age if the alien was a *child* on the date on which the alien applied for such status"); *see also* USCIS Policy Manual, vol. 6, part J, ch. 2(C) & n.3 (referring to this provision as "age-out protection"). Until recently, this is how USCIS straightforwardly understood and applied the SIJ provisions of the INA. *See* VanScoyoc Dec. ¶¶ 11–12, 22.[7/] Indeed, USCIS continues to do so in limited instances, for petitions indistinguishable from Plaintiffs' petitions. *See* VanScoyoc Dec. ¶¶ 22–23.

23.     "Juvenile court" in Section 1101(a)(27)(J) is defined in the implementing regulations as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). In other words, state law governing state court subject-matter jurisdiction determines what constitutes a

---

[7/]     Citations to "VanScoyoc Dec." refer to the Declaration of Ellen VanScoyoc accompanying this Complaint.

"juvenile court" here. It is not necessary for the state court to be titled a "juvenile court" under state law to count as a "juvenile court" under the SIJ provisions of the INA. Probate and Family courts also are "juvenile courts" for these purposes so long as they "hav[e] jurisdiction under state law to make judicial determinations about the custody and care of children." USCIS Policy Manual, vol. 6, part J, ch. 3(A)(1).

24.     Furthermore, a court need not make a custody determination in an individual case to constitute or act as a "juvenile court"; the court must simply "hav[e] jurisdiction under State law" generally to make such determinations to satisfy the regulation's definition of "juvenile court." 8 C.F.R. § 204.11(a). The SIJ provisions of the INA make this last point clear, as the child may be eligible if the juvenile court *either* declares the child dependent on the court *or* places the child "under the custody of" a court-designated individual or entity. 8 U.S.C. § 1101(a)(27)(J)(i). *See R.F.M. v. Nielsen*, No. 18-cv-5068 (JGK), 2019 U.S. Dist. LEXIS 43547, at \*51–53 (S.D.N.Y. Mar. 15, 2019) ("Congress expressly listed any SIJ prerequisites dealing with custody in the disjunctive, such that a custody order cannot be required in cases where the juvenile has been declared dependent on the juvenile court. . . . The SIJ statute makes a dependency order sufficient."). This explicit disjunctive would be rendered meaningless, contrary to well-established principles of statutory interpretation, if the term "juvenile court" implicitly required a custody determination in every case. *See Young v. UPS*, 135 S. Ct. 1338, 1352 (2015) (cleaned up) ("We have long held that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause is rendered superfluous, void, or insignificant."); *see also Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co.*, 734 F.3d 51, 57 (1st Cir. 2013) (cleaned up) ("The terms are in the disjunctive . . . and the word 'or' must be given effect."); Antonin Scalia & Bryan Garner, *Reading Law* 116 (2012) ("[A]nd combines items while *or* creates alternatives."); *cf. Bibbo v.*

*Mulhern*, 621 F. Supp. 1018, 1029 (D. Mass. 1985) (noting that "use of the disjunctive 'or' instead of the conjunctive 'and,' expands the range of situations" where a provision is applicable).

25.     Dependency on a "juvenile court" is determined by the "juvenile court," which is done "in accordance with state law governing such declarations of dependency." 8 C.F.R. § 204.11(c)(3). Consistent with the 2008 amendments that abrogated the foster-care requirement, *see supra* ¶¶ 19–20 & n.6, a dependency determination is distinct from custodial placement and is independently sufficient to establish SIJ eligibility. *See, e.g.*, USCIS Policy Manual, vol. 6, part J, ch. 2(A) (emphasis added) (noting that a "child may be eligible for SIJ classification" when, among other things, the juvenile court makes findings under state law "on dependency *or* custody"); *id.* vol. 6, part J, ch. 2(D)(1) (emphasis added) (noting that the SIJ petitioner must "be the subject of a juvenile court order that" either "declares him or her dependent on a juvenile court, *or* legally commits to or places the petitioner under the custody of either an agency or department of a state"). USCIS applied the statute in this way until recently. *See* VanScoyoc Dec. ¶¶ 12, 22.

**Massachusetts State Law**

26.     Under Massachusetts law, both the state Probate and Family Court and the court called the "Juvenile Court" have jurisdiction to make judicial determinations about the custody and care of juveniles. *See* Mass. Gen. Laws ch. 119, § 39M(a) (specifying that "the probate and family court" has jurisdiction "to make decisions concerning the protection, well-being, care and custody of a child"); *see also Guardianship of Penate*, 76 N.E.3d 960, 965 n.11 (Mass. 2017) ("In Massachusetts, determinations regarding the care and custody of juveniles fall within the jurisdiction of . . . the Probate and Family Court[.]"); *Recinos v. Escobar*, 46 N.E.3d 60, 62 n.1, 64–65 (Mass. 2016) ("[A] 'juvenile court' includes the Probate and Family Court . . . . In Massachusetts, the Juvenile Court and the Probate and Family Court both have jurisdiction to make

judicial determinations about the care and custody of juveniles . . . ."); Mass. Gen. Laws ch. 215, § 3 ("Probate courts shall have jurisdiction . . . of such other matters as have been or may be placed within their jurisdiction."). Thus, the Massachusetts Probate and Family Court is "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a).

27.     Furthermore, both the Massachusetts Probate and Family Court and the Juvenile Court expressly have jurisdiction "as a juvenile court" to make the requisite findings for SIJ classification for an unmarried child under the age of twenty-one, who is a "child" under state law for these purposes. Mass. Gen. Laws ch. 119, § 39M(a)–(b). So, an unmarried immigrant under the age of twenty-one may request the Probate and Family Court's assistance for special findings regarding: (1) that child's dependency on the state court; (2) the abuse, neglect, and/or abandonment that child has suffered; (3) the non-viability of that child's reunification with one or both parents due to that abuse, neglect, and/or abandonment; and (4) the fact that removal to the child's (or child's parents') country of origin is not in the best interests of the child. *Id.* Acting as a juvenile court under state law, the Probate and Family Court must then issue findings of fact and rulings of law with respect to each of these points. *Id.* § 39M(e); *see Guardianship of Penate*, 76 N.E.3d at 966 ("[T]he Probate and Family Court judge may not decline to make special findings if requested by an immigrant child . . . ."). The child may also request protective orders, support, or other available remedies, and the court may refer the child for social services. Mass. Gen. Laws ch. 119, § 39M(c)–(d).

28.     Section 39M specifically applies to, and retroactively governs, "any special findings issued that form the basis of a child's petition for special immigrant juvenile classification if that petition is subject to denial or revocation based on the child's dependency status or age

when the special findings were issued." 2018 Mass. Ch. 154, § 105. As will be discussed below, USCIS denied Plaintiffs' SIJ petitions on both these grounds, meaning 39M applies to the special findings upon which their petitions were based.

**Special Immigrant Juvenile Status and Cooperative Federalism**

29.    As demonstrated by the above, the SIJ provisions of the INA constitute a type of "cooperative federalism," which is "the distribution of power between the federal government and the states in which each recognizes the powers of the other while jointly engaging in certain governmental functions." *Gonzalez-Caban v. JR Seafood*, 132 F. Supp. 3d 274, 283 n.9 (D.P.R. 2015) (citing *Black's Law Dictionary* 687 (9th ed. 2009)). Here, Congress has "recognize[d] the power[]" of state courts to act according to their jurisdiction under state law and to make key findings pursuant to state law that permit an individual to apply for SIJ classification under the INA. Indeed, "USCIS relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law." USCIS Policy Manual, vol. 6, part J, ch. 2(D)(5). *See id.* ch. 2(A) ("USCIS generally defers to the court on matters of state law and does not go behind the juvenile court order to reweigh evidence and make independent determinations about abuse, neglect, or abandonment.").

30.    The SIJ provisions of the INA and implementing regulations look to and effectively incorporate state law in a number of ways. Specifically, what constitutes a "juvenile court" within the meaning of Section 1101(a)(27)(J) is determined by "State law." 8 C.F.R. § 204.11(a). Likewise, what constitutes dependency is a question to be decided by that state court "in accordance with state law." 8 C.F.R. § 204.11(c)(3). The state court will also typically make the required findings, based on state law: (1) that the individual's reunification with one or both parents

is not viable due to abuse, abandonment, neglect, "or a similar basis found under State law"; and (2) that it is not in the individual's best interests to be returned to her or her parent's country of origin. 8 U.S.C. § 1101(a)(27(J)(i); 8 C.F.R. § 204.11(c)(3)–(6); *see* USCIS Policy Manual, vol. 6, part J, ch. 2(D)(2)–(3).[8/] The Policy Manual emphasizes this scheme of cooperative federalism by recognizing that "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law." USCIS Policy Manual, vol. 6, part J, ch. 2(D)(4); *accord id.* ch. 3(A)(2) (same).

31.     Where laws are "designed to advance cooperative federalism," they should be construed in a way so as "to leave a range of permissible choices to the States," particularly so where, as here, "the superintending federal agency has concluded that such latitude is consistent with the statute's aims." *Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 495 (2002); *see* USCIS Policy Manual, vol. 6, part J, ch. 2(D)(5). This latitude is the practical upshot of two fundamental principles. The first is the principle embodied in the Constitution's structure generally and the Tenth Amendment to the U.S. Constitution specifically, that "the States are separate sovereigns from the Federal Government." *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1871 (2016). The second is the principle that "due respect" is owed "legislative choices," and the proper response of the other two branches of government to those choices are to "faithfully

---

[8/]     The statute here does not specify which court is to make the reunification finding "under State law" or the best-interests determination "in administrative or judicial proceedings." 8 U.S.C. § 1101(a)(27)(J)(i)–(ii). The Policy Manual has adopted the position that "[t]he juvenile court must find that reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis under the relevant state child welfare laws." USCIS Policy Manual, vol. 6, part J, ch. 2(D)(2). So too, the implementing regulations require that the best-interests determination take place in proceedings at least "authorized or recognized by the juvenile court," if not done by the state court itself. 8 C.F.R. § 204.11(c)(6); *see* USCIS Policy Manual, vol. 6, part J, ch. 2(D)(3) ("[I]t must be determined by the juvenile court (or in administrative proceedings recognized by the juvenile court) that it would not be in the best interest of the petitioner to be returned to the country of nationality or last habitual residence of the petitioner or his or her parents."); *see also id.* ch. 3(A)(2) ("The juvenile court order . . . must provide the required findings regarding dependency or custody, parental reunification, and best interests.").

execute[]" them and to interpret and apply them properly. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426 (2010); U.S. Const. Art. II, § 3.

32.     Thus, USCIS must respect Congress's choice to commit to state courts the responsibility and power to make the key findings under state law required for SIJ eligibility. Both the due respect owed to Congress's choices in Section 1101(a)(27)(J) and fundamental principles of federalism require that federal agencies honor state law with respect to: (1) the nature and scope of the state court's jurisdiction; (2) the state court's conclusions as to a SIJ petitioner's dependency; (3) that court's findings concerning the non-viability of the petitioner's reunification with one or both parents due to abuse, abandonment, or neglect; and (4) the state court's conclusions as to what is in the best interests of the child.

**Post-18 SIJ Petitions & Past USCIS Practice**

33.     The Massachusetts Probate and Family Court has been issuing special findings of fact and rulings of law at the request of children between the ages of eighteen and twenty-one since at least 2011. VanScoyoc Dec. ¶ 12.

34.     In the past, USCIS has granted SIJ petitions just like Plaintiffs' that were supported by orders issued by the Massachusetts Probate and Family Court. *Id.*

35.     However, near the end of 2017, USCIS stopped granting SIJ petitions submitted by children over the age of eighteen who had received the requisite findings for SIJ eligibility from the Massachusetts Probate and Family Court that were effectively identical to cases that USCIS had previously approved. VanScoyoc Dec. ¶ 15. Instead, USCIS began issuing "Requests for Evidence" (RFEs) and "Notices of Intent to Deny" (NOIDs), indicating that it intended to deny SIJ petitions submitted by children between the ages of eighteen and twenty-one. *Id.*

36.     Although USCIS's explanation has varied since 2017, USCIS has essentially taken issue with the fact that the special findings were issued by the state Probate and Family Court on behalf of children between the ages of eighteen and twenty-one. *See* VanScoyoc Dec. ¶¶ 16–22. As bases for its rejection of SIJ petitions filed by children between the ages of eighteen and twenty-one, USCIS has said variously that: (1) the petitioner had attained the "age of majority" under state law, purportedly making the petitioner ineligible for SIJ classification; (2) the state court did not constitute or was not "acting as a juvenile court" in making the requisite findings for the petitioner who was between the ages of eighteen and twenty-one; (3) the state court order was insufficient absent a custody, placement, or supervision order in addition to the dependency finding; (4) the court's reunification findings are insufficient absent the court's ability to decide whether the allegedly unfit parent should regain or lose custody in that case; and/or (5) the SIJ petition is not "bona fide"[9/] unless the underlying state court order contains a custody adjudication, not merely a dependency order. *See id.*

**Macy's SIJ Petition**

37.     Macy was born in 1996 in Ecuador. *Affidavit of Macy*, Exh. 1, ¶ 1.[10/]

38.     When Macy was seven, she was raped by two of her family members, by one of them repeatedly over an extended period of time. *Id.* ¶ 4. Her assailants threatened to harm her further if she reported them to the police. *Id.*

39.     Macy nevertheless told her parents about this sexual abuse. *Id.* However, her parents blamed Macy for it, shamed her, and did not report these incidents to the police. *Id.* ¶¶ 3–

---

[9/]     *See* USCIS Policy Manual, vol. 6, part J, ch. 2(D)(5) ("In order to consent, USCIS must review the juvenile court order to conclude that the request for SIJ classification is bona fide, which means that the juvenile court order was sought to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit.").
[10/]    Citations to "Exh." refer to the exhibits accompanying this Complaint.

4. Macy had to encounter her assailants repeatedly throughout her life in Ecuador, fearing what might happen to her every time she did. *Id.* ¶¶ 4, 6.

40.     Macy was also domestically abused by her aunt, who lived in the family home. *Id.* ¶ 5.

41.     Furthermore, Macy was bullied in school and in her neighborhood for being indigenous from a rural part of Ecuador. *Id.*

42.     Macy's parents neglected her, failing to protect her from the abuse she repeatedly endured and even blaming her for it. *Id.*

43.     Macy thus fled Ecuador, coming to the United States when she was seventeen. *Id.* ¶ 7.

44.     Macy currently resides with a caretaker in Massachusetts. *Id.* ¶ 8. She is undergoing psychological therapy to cope with the various traumas she suffered in Ecuador, owing in large part to her parents' victim-blaming behavior and failure to protect her. *Id.*

45.     Macy is not, and has never been, married.

*Massachusetts Proceedings*

46.     When Macy was twenty, she requested and received special findings of fact and rulings of law from the Massachusetts Probate and Family Court. *Decree of Special Findings of Fact and Rulings of Law*, Exh. 2.

47.     In its "Decree of Special Findings of Fact and Rulings of Law," the court made the following findings and rulings "based on the supporting affidavit and memorandum of law": (1) Macy is currently a resident of Massachusetts; (2) Macy is unmarried; (3) Macy is "dependent upon this Court's jurisdiction"; (4) Macy's parents "neglected to adequately care, support and protect their daughter throughout her life," meaning that Macy "was neglected under MA state

law"; (5) "reunification with [Macy's] parents . . . is not viable due to neglect from her parents";

and (6) "it is not in [Macy's] best interest to be returned to her previous country of nationality . . .

Ecuador," but instead "[i]t is in [Macy's] best interest to remain in the United States." *Id.*

*USCIS Proceedings*

48.     Before Macy turned twenty-one, she applied for SIJ classification. *See Macy's SIJ

Petition Cover Letter*, Exh. 3. She included with her petition not only the state court's order but

also the affidavits supporting the facts found by the state court. *Id.*

49.     In fall 2018, USCIS replied to this petition with a NOID. *Macy's Notice of Intent

to Deny*, Exh. 4. Although SIJ eligibility requires only a dependency determination and not a

custody placement in addition to that, *see supra* ¶¶ 24–25, USCIS faulted Macy's SIJ petition

because she did "not establish that the state court had jurisdiction under state law to make a legal

conclusion about returning you to your parent(s)' custody." *Macy's Notice of Intent to Deny*, Exh.

4, p. 2. In support of USCIS's assertion that Macy had to "establish that the court issuing the order

had the authority to determine whether the allegedly unfit parent should regain or lose custody of

you," *id.*, USCIS cited 8 C.F.R. § 204.11(a) & (d)(2)(ii), outdated portions of the implementing

regulations that still mention the abrogated "long-term foster care" requirement. *See supra* ¶ 20

n.6.

50.     Nevertheless, in response to this NOID, Macy's attorney submitted both a brief and

a copy of Massachusetts General Laws ch. 119, § 39M, to explain to USCIS that the Massachusetts

Probate and Family Court is a "juvenile court" with jurisdiction under state law to make decisions

concerning the protection, well-being, care and custody of a child, including unmarried children

under the age of twenty-one. *Macy's NOID Reply Cover Letter*, Exh. 5.

51. However, USCIS still denied Macy's SIJ petition in late 2018. *USCIS Decision re: Macy's SIJ Petition*, Exh. 6. First, USCIS stated that Macy was over eighteen "on or before the date the state court order was issued." *Id.*, p. 2. Second, once again citing the outdated regulations, USCIS stated that Macy had to "establish that the court issuing the order had the jurisdiction and authority to determine whether the allegedly unfit parent should regain or lose custody of" her. *Id.* USCIS asserted that Macy had to "establish that the state court had jurisdiction under state law to make a legal conclusion about returning you to the custody of your parents," which, according to USCIS, meant that the Probate and Family Court "was not acting as a juvenile court" within the meaning of Section 1101(a)(27)(J). *Id.* Third, though acknowledging Massachusetts General Laws ch. 119, § 39M, USCIS ignored its plain language and added a requirement for SIJ eligibility in stating that the statute "did not provide the state court with the authority to make custody determinations for individuals over the age of 18." *Id.*, pp. 2–3. Fourth, although the state juvenile court explicitly found Macy "dependent upon this Court's jurisdiction," *supra* ¶ 47, USCIS concluded that "[t]he court did not actually declare you dependent . . . ." *USCIS Decision re: Macy's SIJ Petition*, Exh. 6, p. 3.

52. Macy did not appeal this denial "within 30 days," and so it has become final. *Id. See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (noting how agency action is "final" when it "mark[s] the 'consummation' of the agency's decisionmaking process" and when it is action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow'"). Because this denial is final, it is reviewable by this Court. 5 U.S.C. § 704.

**Thomas's SIJ Petition**

53.     Thomas was born in 1998 in Belize. *First Affidavit of Thomas*, Exh. 7, ¶ 1. Thomas never met his father, who abandoned him and his mother not long after Thomas's mother became pregnant with Thomas. *Id.* ¶ 3.

54.     Thomas's mother came to the United States when Thomas was very young to find work to support him, leaving Thomas with his grandparents in Belize. *Affidavit of Thomas's Mother*, Exh. 8, ¶ 2.

55.     Thomas's grandfather, however, was an alcoholic, causing problems at home, including by physically abusing Thomas's grandmother. *See First Affidavit of Thomas*, Exh. 7, ¶ 5.

56.     Thomas also suffered from an abusive corporal punishment regime in the school he attended, causing him to struggle in classes. *Id.*

57.     Thomas was able to escape these hardships in 2009, when he came to the United States. *Affidavit of Thomas's Mother*, Exh. 8, ¶ 4.

58.     Thomas has since graduated from high school, earning accolades in the process for his civic contributions. *Second Affidavit of Thomas*, Exh. 9, ¶ 3.

59.     Thomas currently resides with his mother in Massachusetts. *See First Affidavit of Thomas*, Exh. 7, ¶ 1.

60.     Thomas is not, and has never been, married.

*Massachusetts Proceedings*

61.     When Thomas was seventeen, he requested special findings from the Massachusetts Probate and Family Court.

62.     After Thomas turned eighteen, the Probate and Family Court issued Findings of Fact and Rulings of Law. In its "Findings of Fact and Rulings of Law," the court made the following findings and rulings "[a]fter hearing": (1) Thomas is a resident of Massachusetts; (2) Thomas is "an unmarried minor juvenile"; (3) Thomas is "dependent upon the Massachusetts Probate and Family Court"; (4) reunification with Thomas's father "is not viable due to abandonment"; and (5) "it is not in the best interest of [Thomas] to be returned to Belize, the country of his nationality," but rather "[i]t is in the best interest of [Thomas] to remain in the United States . . . ." *Findings of Fact and Rulings of Law*, Exh. 10.

*USCIS Proceedings*

63.     Before Thomas turned twenty-one, he applied for SIJ classification. *See Thomas's SIJ Petition Cover Letter*, Exh. 11. He included with his petition not only the state court's order but also the affidavits supporting the facts found by the state court. *Id.*

64.     USCIS responded to Thomas's petition both with an RFE and a NOID. *See Request for Evidence*, Exh. 12;[11/] *Thomas's Notice of Intent to Deny*, Exh. 13. In reply, Thomas provided USCIS with an amended order from the state court, effective *nunc pro tunc* from the date of the original order, making clear both the factual and legal bases for that court's special findings and rulings. *Amended Order of Special Findings of Fact and Rulings of Law*, Exh. 14.

65.     Nevertheless, USCIS denied Thomas's SIJ petition in late 2018. *USCIS Decision re: Thomas's SIJ Petition*, Exh. 15. First, USCIS stated that Thomas was over eighteen "on or before the date the state court order was issued." *Id.*, p. 2. Second, citing outdated regulations, *see supra* ¶ 20 n.6, USCIS stated that Thomas had to "establish that the court issuing the order had the

---

[11/]     Although Thomas lives in Massachusetts, and the predicate state court order accompanying his SIJ petition came from a Massachusetts court, the RFE inexplicably discussed provisions of Maryland state law. *See* Exh. 12, p. 1 (discussing Md. Code Family Law § 1-201).

jurisdiction and authority to determine whether the allegedly unfit parent should regain or lose custody of" him. *USCIS Decision re: Thomas's SIJ Petition*, Exh. 15, p. 3. USCIS asserted that Thomas had to "establish that the state court had jurisdiction under state law to make a legal conclusion about returning you to the custody of your parents," which, according to USCIS, meant that the Probate and Family Court "was not acting as a juvenile court" within the meaning of Section 1101(a)(27)(J). *Id.* Third, though acknowledging Massachusetts General Laws ch. 119, § 39M, USCIS ignored its plain language and added a requirement for SIJ eligibility in stating that the statute "did not provide the state court with the authority to make custody determinations for individuals over the age of 18." *Id.* Fourth, although the state juvenile court explicitly found Thomas dependent on that court, *supra* ¶ 62, USCIS concluded that "[t]he court did not actually declare you dependent . . . ." *USCIS Decision re: Thomas's SIJ Petition*, Exh. 15, p. 3. Fifth, despite the court's factfinding regarding Thomas's best interests and Thomas's submission of the underlying affidavits supporting this factfinding to USCIS, *see supra* ¶¶ 21, 63, USCIS stated that there was "insufficient evidence to show the factual basis that it would not be in your best interest to be returned to your or your parent's country of nationality . . . ." *USCIS Decision re: Thomas's SIJ Petition*, Exh. 15, p. 3.

66.     Thomas did not appeal this denial "within 30 days," and so it has become final. *Id. See Bennett*, 520 U.S. at 177–78. Because this denial is final, it is reviewable by this Court. 5 U.S.C. § 704.

**Plaintiffs' Eligibility for SIJ Classification and Right to Relief**

67.     Plaintiffs are entitled to SIJ classification and relief from removal under federal immigration law because: (1) they were under twenty-one at the time they filed their SIJ petitions; (2) they are unmarried; (3) they have been declared dependent on a state juvenile court; (4) it has

been determined with respect to each of them that reunification with one or both parents is not viable due to abuse, neglect, abandonment, or other similar bases; (5) a state juvenile court has determined that it is not in their best interest to be returned to their countries of origin; and (6) their SIJ petitions have been filed to obtain relief from the abuse, neglect, and/or abandonment they each faced in their countries of origin.

68.     USCIS's denials have deprived Plaintiffs of their rights under the U.S. Constitution and the laws of the United States. This deprivation is not only concrete, traceable to USCIS's denials, and redressable by this Court, but it is also irreparable and "must be stopped immediately." *Lainer v. City of Boston*, 95 F. Supp. 2d 17, 20–21 (D. Mass. 2000); *Brugliera v. Comm'r of Mass. Dep't of Corr.*, C.A. No. 07-40323-JLT, 2009 U.S. Dist. LEXIS 131002, at *34 (D. Mass. Dec. 16, 2009).

69.     This deprivation has also immediately harmed Plaintiffs by hindering them from pursuing work and education opportunities, which "financial harm and significant opportunity costs" are "exacerbated by Plaintiffs' young age and fragile socioeconomic status." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 977–78 (9th Cir. 2017); *see Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 267 (C.D. Cal. 2008) ("[L]osing eligibility for SIJ status and SIJ-based adjustment" constitutes "substantial and immediate irreparable injury[.]"); *see also* VanScoyoc Dec. ¶¶ 27–30.

70.     Additionally, Plaintiffs currently face the threat of deportation due to these denials of their SIJ petitions. *See* VanScoyoc Dec. ¶¶ 25–26. This threat is also concrete, traceable to USCIS's denials, and redressable by this Court. *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 936 (1983) ("A person threatened with deportation cannot be denied the right to challenge the constitutional validity of the process which led to his status . . . ."); *Kirwa*, 285 F. Supp. 3d at 42–43 (finding

redressable, irreparable harm where the government's "blocking access to an existing legal avenue for avoiding removal" left "plaintiffs in limbo and in fear of removal").

71.     These final agency actions should be set aside under the APA as they were arbitrary, capricious, not in accordance with the law, contrary to constitutional right, and done in excess of statutory jurisdiction and authority. 5 U.S.C. § 706(2).

72.     These final agency actions should be invalidated as unconstitutional because they deprived Plaintiffs of due process of law and violated their rights to the authority, benefit, and protection of state law.

73.     This Court should preliminarily and permanently enjoin Defendants from taking any steps towards removing Plaintiffs from the United States on the basis that they are ineligible for SIJ classification and subject to removal accordingly. This Court should also preliminarily and permanently enjoin USCIS to reopen Plaintiffs' SIJ petitions and grant these petitions. Without an injunction preventing USCIS and DHS from further depriving Plaintiffs of their constitutional and statutory rights, Plaintiffs face irreparable harm in the form of ongoing deprivations of those rights, the inability to benefit from the lawful status to which they are entitled, and the threat of forcible removal from the United States back to their countries of origin. Furthermore, not only would removal itself inflict grave harm on Plaintiffs, but it would also subject them to the very traumas from which they fled and about which they sought relief via their SIJ petitions.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(5 U.S.C. § 706(2)(A) – Arbitrary, Capricious, Abuse of Discretion, or Not in Accordance with Law)
(8 U.S.C. § 1101(a)(27)(J))
(Mass. Gen. Laws ch. 119, § 39M)

74.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75.     Under the APA, this Court must "set aside agency action . . . found to be[] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A).

76.     Under the INA, Plaintiffs are eligible for SIJ classification.

77.     The Massachusetts Probate and Family Court orders supporting Plaintiffs' SIJ petitions comport with state law and establish Plaintiffs' eligibility for SIJ classification, containing all the necessary findings for that purpose.

78.     However, USCIS has denied Plaintiffs' SIJ petitions, contrary to its own prior practices and current policies, on arbitrary and erroneous bases.

79.     USCIS's denials were contrary to both federal and state law.

80.     USCIS's denials were arbitrary, capricious, an abuse of discretion, and not in accordance with law, and these agency actions should be set aside accordingly. 5 U.S.C. § 706(2)(A).

### SECOND CAUSE OF ACTION
(5 U.S.C. § 706(2)(B) – Contrary to Constitutional Right, Privilege, or Immunity)
(8 U.S.C. § 1101(a)(27)(J))
(Mass. Gen. Laws ch. 119, § 39M)

81.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

24

82.     Under the APA, this Court must "set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity . . . ." 5 U.S.C. § 706(2)(B).

83.     Under the Fifth Amendment to the U.S. Constitution, the federal government is prohibited from depriving any "person" of "life, liberty, or property, without due process of law[.]" U.S. Const., Amend. V.

84.     This guarantee of due process applies to all persons within the United States, whether citizens or not, and whether their presence in the United States is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

85.     A person may have a cognizable "property interest" in a government benefit or status, protected by this guarantee of due process, when "existing rules or understandings" give an individual a "claim of entitlement" to that benefit or status. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

86.     By satisfying the criteria for SIJ eligibility, Plaintiffs have a cognizable claim of entitlement to SIJ classification pursuant to existing immigration laws and rules.

87.     USCIS's denials thus deprived Plaintiffs of a constitutionally-cognizable property interest in violation of the Fifth Amendment.

88.     Additionally, through the structure of the U.S. Constitution generally, as well as the Tenth Amendment to the U.S. Constitution specifically, authority has been divided "between federal and state governments for the protection of individuals." *New York v. United States*, 505 U.S. 144, 181 (1992).

89.     Given that this federalist structure exists to protect individual liberty, an individual has a "direct interest" in challenging unconstitutional practices that "upset the constitutional

balance between the National Government and the States . . . ." *Bond v. United States*, 564 U.S. 211, 222 (2011).

90.     In this case, Defendants have upset "the constitutional balance between the National Government and the States" (a balance that Congress itself reinforced in Section 1101(a)(27)(J)) by ignoring and/or misconstruing Massachusetts state law regarding the jurisdiction and authority of the Massachusetts Probate and Family Court. *See* Mass. Gen. Laws ch. 119, § 39M.

91.     USCIS's denials were thus contrary to Plaintiffs' constitutional right to be governed under and according to the laws of the Commonwealth of Massachusetts. *See Bond*, 564 U.S. at 221–22.

92.     For these reasons, USCIS's denials were contrary to constitutional right, power, privilege, or immunity, and these agency actions should be set aside accordingly. 5 U.S.C. § 706(2)(B).

**THIRD CAUSE OF ACTION**
**(5 U.S.C. § 706(2)(C) – In Excess of Statutory Jurisdiction, Authority, or Limitations)**
**(8 U.S.C. § 1101(a)(27)(J))**
**(Mass. Gen. Laws ch. 119, § 39M)**

93.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

94.     Under the APA, this Court must "set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations . . . ." 5 U.S.C. § 706(2)(C).

95.     Agencies that are charged with administering congressional statutes have "[b]oth their power to act and how they are to act . . . authoritatively prescribed by Congress," and "when

they act beyond their jurisdiction, what they do is ultra vires." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).

96.     Congress has tasked DHS and USCIS with administering federal immigration laws, and these agencies "literally ha[ve] no power to act" outside of or beyond the scope of this congressional grant of authority. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

97.     In denying Plaintiffs' SIJ petitions, however, Defendants went beyond their statutory jurisdiction and authority by adding or modifying requirements to the SIJ provisions of the INA, by misconstruing and misapplying state law, and by substituting their judgment for that of the state courts responsible under the INA to make the requisite findings required for SIJ eligibility.

98.     Defendants are imposing these *ultra vires* requirements and exceeding their statutory authority based upon outdated regulations that conflict with the current law.

99.     USCIS's denials were in excess of its statutory jurisdiction and authority, and these agency actions should be set aside accordingly. 5 U.S.C. § 706(2)(C).

**FOURTH CAUSE OF ACTION**
**(U.S. Const., Amend. V – Due Process)**
**(28 U.S.C. § 2201)**

100.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

101.     Under the Fifth Amendment to the U.S. Constitution, the federal government is prohibited from depriving any "person" of "life, liberty, or property, without due process of law[.]" U.S. Const., Amend. V.

102.    This guarantee of due process applies to all persons within the United States, whether citizens or not, and whether their presence in the United States is lawful, unlawful, temporary, or permanent. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

103.    A person may have a cognizable "property interest" in a government benefit or status, protected by this guarantee of due process, when "existing rules or understandings" give an individual a "claim of entitlement" to that benefit or status. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

104.    By satisfying the criteria for SIJ eligibility, Plaintiffs have a cognizable claim of entitlement to SIJ classification pursuant to existing immigration laws and rules.

105.    USCIS's denials thus deprived Plaintiffs of a constitutionally-cognizable property interest in violation of the Fifth Amendment.

106.    Under the Declaratory Judgment Act, this Court may, "[i]n a case of actual controversy within its jurisdiction," "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a).

107.    USCIS's denials have created an actual controversy within this Court's jurisdiction.

108.    Plaintiffs are interested parties as their constitutional rights have been violated by USCIS's denials.

109.    Accordingly, this Court should declare that Plaintiffs are entitled to SIJ classification and USCIS has unconstitutionally denied them this right.

### FIFTH CAUSE OF ACTION
### (U.S. Const., Amend. X – Federalism)
### (28 U.S.C. § 2201)

110.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

111.    Under the U.S. Constitution, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const., Amend. X.

112.    The Tenth Amendment makes explicit in the Constitution what is embedded in its structure: a federal system of government, which "secures the freedom of the individual" by allowing "States to respond . . . to the initiative of those who seek a voice in shaping the destiny of their own times without having to rely solely upon the political processes that control a remote central power." *Bond*, 564 U.S. at 221.

113.    This federalist structure "protects the liberty of all persons within a State by ensuring that laws enacted in excess of delegated governmental power cannot direct or control their actions," thereby "protect[ing] the liberty of the individual from arbitrary power." *Bond*, 564 U.S. at 222.

114.    Accordingly, "States are not the sole intended beneficiaries of federalism," and so an individual may bring a claim under the Tenth Amendment to object to unconstitutional practices that "upset the constitutional balance between the National Government and the States . . . ." *Bond*, 564 U.S. at 222.

115.    In this case, Plaintiffs are entitled to the rights and benefits provided for by the laws of the Commonwealth of Massachusetts. Specifically, Plaintiffs are entitled to those benefits that follow from the fact that the Massachusetts Probate and Family Court is a "juvenile court" under state law with jurisdiction over unmarried children under the age of twenty-one to make care and custody determinations and special findings on their behalf. *See* Mass. Gen. Laws ch. 119, § 39M; *Guardianship of Penate*, 76 N.E.3d at 965 n.11; *Recinos*, 46 N.E.3d at 62 n.1.

116.    USCIS's denials have denied Plaintiffs these rights and benefits guaranteed to them by the structure of the U.S. Constitution and the Tenth Amendment, as reinforced by Section 1101(a)(27)(J).

117.    Under the Declaratory Judgment Act, this Court may, "[i]n a case of actual controversy within its jurisdiction," "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a).

118.    USCIS's denials have created an actual controversy within this Court's jurisdiction.

119.    Plaintiffs are interested parties as their constitutional rights have been violated by USCIS's denials.

120.    Accordingly, this Court should declare that Plaintiffs' Tenth Amendment rights entitle them to SIJ classification and USCIS has unconstitutionally denied them this right.

## SIXTH CAUSE OF ACTION
### (28 U.S.C. § 2201)

121.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

122.    Under the Declaratory Judgment Act, this Court may, "[i]n a case of actual controversy within its jurisdiction," "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a).

123.    USCIS's denials have created an actual controversy within this Court's jurisdiction.

124.    Plaintiffs are interested parties as their rights have been violated by USCIS's denials.

125.    This Court should declare that: (1) the Massachusetts Probate and Family Court is a "juvenile court" acting as such for purposes of Section 1101(a)(27)(J) when issuing Findings of Fact and Rulings of Law requested by unmarried children under the age of twenty-one residing in

the Commonwealth of Massachusetts; (2); the Massachusetts Probate and Family Court did not need to make a custodial placement in order for Plaintiffs to be eligible for SIJ classification; (3) the state court orders underlying Plaintiffs' SIJ petitions were sufficient for purposes of SIJ classification and were supported by a sufficient factual basis to warrant granting Plaintiffs SIJ classification; (4) Plaintiffs were eligible for SIJ classification accordingly when they filed their SIJ petitions prior to turning twenty-one, regardless of the fact that they were over eighteen at the time they filed their SIJ petitions; (5) Defendants have violated Plaintiffs' rights under the Fifth Amendment, the Tenth Amendment, and 8 U.S.C. § 1101(a)(27)(J), in denying their SIJ petitions; and (6) these denials have violated 5 U.S.C. § 706 and must be set aside as arbitrary, capricious, an abuse of discretion, not in accordance with the law, contrary to constitutional right, and done in excess of statutory jurisdiction and authority.

## PRAYER FOR RELIEF

Per the foregoing, Plaintiffs request that this Court grant the following relief:

1.      A declaration that USCIS's denials are unconstitutional under the Fifth and Tenth Amendments and unlawful under 8 U.S.C. § 1101(a)(27)(J) and 5 U.S.C. § 706;

2.      A declaration that, per Massachusetts General Laws ch. 119, § 39M, the Massachusetts Probate and Family Court is a "juvenile court" for purposes of Section 1101(a)(27)(J) and acts as such when issuing the requisite findings for SIJ eligibility to children under the age of twenty-one;

3.      A declaration that Plaintiffs, per Massachusetts General Laws ch. 119, § 39M and 8 U.S.C. § 1101(b)(1), were eligible for SIJ classification when they filed their SIJ petitions while under twenty-one years of age, regardless of the fact that they were over eighteen at the time;

4.      A declaration and order setting aside USCIS's denials as arbitrary, capricious, an abuse of discretion, or otherwise contrary to law; contrary to constitutional right, privilege, or immunity; and in excess of statutory jurisdiction, authority, or limitations;

5.      Preliminary and permanent injunctions prohibiting Defendants from initiating, or continuing with, removal proceedings against Plaintiffs that are premised on the basis that Plaintiffs are not eligible for SIJ classification and subject to removal accordingly;

6.      A preliminary injunction requiring Defendants to rescind their previous denials of Plaintiffs' SIJ petitions and to reopen Plaintiffs' SIJ petitions;

7.      A permanent injunction requiring Defendants to grant Plaintiffs' SIJ petitions;

8.      Preliminary and permanent injunctions requiring Defendants to provide Plaintiffs with work authorization during the pendency of this case, to which Plaintiffs would be entitled with approved SIJ petitions;

9.      An award of reasonable attorneys' fees, costs, and other disbursements under 28 U.S.C. § 2412; and

10.     Any other relief this Court deems just and proper.

Dated: June 7, 2019

Respectfully submitted,

PLAINTIFFS

By their attorneys,


/s/ Susan M. Finegan
Susan M. Finegan (BBO # 559156)
Emily Kanstroom Musgrave (BBO # 678979)
Mathilda McGee-Tubb (BBO # 687434)
Courtney Herndon (BBO # 693418)
Joel S. Nolette (BBO # 698326)
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center, 40th Floor
Boston, MA 02111
(617) 542 – 6000 (Telephone)
(617) 542 – 2241 (Facsimile)
SMFinegan@mintz.com
EKMusgrave@mintz.com
MSMcGee-Tubb@mintz.com
CHerndon@mintz.com
JSNolette@mintz.com

Elizabeth Badger (BBO # 663107)
PAIR Project
98 North Washington Street, Suite 106
Boston, MA 02114
(617) 742 – 9296 ext. 5 (Telephone)
ebadger@pairproject.org


83041359